ERROL B. RESNICK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Resnick v. Commissioner
Docket Nos. 574-72, 576-72.
United States Tax Court
T.C. Memo 1976-215; 1976 Tax Ct. Memo LEXIS 189; 35 T.C.M. (CCH) 940; T.C.M. (RIA) 760215; July 1, 1976, Filed As amended July 8, 1976 *189 Petitioner was a professional numismatist who was engaged in sales of gold coins. In his Federal income tax return for 1967 he reported sales of coins of $4,535,626.82 and a cost of goods sold of $4,417,641.90, and in his 1968 return he reported sales of $6,187,129.06 and cost of goods sold of $5,950,174.15. Held: 1. Receipts presented by petitioner in substantiation of his cost of goods sold for each of the years in question were false, prepared by him pursuant to a fraudulent conspiracy, and do not represent actual purchases of coins. Lower amounts allowed by respondent as cost of goods sold are sustained. 2. Petitioner is liable for the additions to tax for fraud. Errol B. Resnick, pro se. Robert D. Grossman, Jr., for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Chief Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes and additions to tax: Docket
Additions to Tax Year
Number
Deficiency
Section 6653(b) [1]
1967
576-72
$2,153,913.79
$1,076,956.90
1968
574-72
2,851,879.75
1,425,939.88
*190 Two issues are presented for our decision: (1) Whether the amounts reported by petitioner as cost of goods sold in each of the years in question represented his true cost of goods sold or whether such amounts were fraudulently overstated with the intent to evade tax; and (2) whether any part of petitioner's underpayment of tax for the years 1967 and 1968 was due to fraud. FINDINGS OF FACT Petitioner resided in Orlando, Florida, during the years at issue and filed his Federal income tax returns for such years with the Internal Revenue Service Center at Chamblee, Georgia. [2]
During 1960 or 1961 petitioner was employed as a draftsman at Martin-Marietta Company in Orlando, Florida. During the years at issue, 1967 and 1968, and for a time prior thereto, petitioner was a professional numismatist, dealing in gold coins. While petitioner was employed at the Martin-Marietta Company he met Gerald Alexander Forrester III, who was also employed there as a draftsman at a salary of $125 per week. In early 1964 petitioner telephoned Forrester from Atlanta, Georgia, and requested that Forrester *191 travel to Atlanta to meet with him. Forrester did so, and met with petitioner, who was accompanied by an individual named Robert Melia. At this meeting petitioner told Forrester that petitioner had the opportunity to purchase large quantities of gold coins, but that the supplier of such coins was an individual who was unwilling to furnish receipts or any other documentation of petitioner's purchases. Accordingly, petitioner offered to pay Forrester $100 per week if Forrester would agree to sign false receipts purporting to show sales of coins by Forrester to petitioner. Forrester agreed to this arrangement at the time of the 1964 meeting, and signed false receipts for petitioner continuously thereafter until January 1969. Forrester never in fact sold any coins to petitioner. The receipts which Forrester signed were prepared by petitioner in his own hand printing on business forms bearing petitioner's letterhead. These same forms, which were in the style of sales slips which would be prepared by a vendor, were also used by petitioner for sales of coins to customers. The purported receipts prepared by petitioner on petitioner's form were simply signed by Forrester at the bottom. *192 In addition to the receipts purporting to evidence sale of coins by Forrester to petitioner, petitioner asked Forrester to prepare a corresponding set of receipts purporting to evidence the earlier acquisition of the same coins by Forrester from third parties. Forrester prepared such receipts upon petitioner's instructions, using fictitious names and false signatures for the vendors. In 1969 petitioner advised Forrester that petitioner's Federal income tax returns were being investigated by agents of the Internal Revenue Service. He told Forrester that if the agents should contact him, he should maintain his false role as supplier of coins to petitioner, as shown in the dual series of false receipts. Forrester did so, even to the point of substantiating petitioner's story in a sworn deposition given in connection with the tax investigation of petitioner. During 1967 and 1968 Forrester reported $4,804 and $4,852.75, respectively, as miscellaneous income in his Federal income tax returns. During the years 1971 through 1973, petitioner was convicted of several state and federal crimes, including two convictions of first degree murder, smuggling of marijuana, melting of United *193 States silver coins, possession of firearms and attempted escape. The trial of this case was held in the Federal penitentiary at Oxford, Wisconsin, where petitioner was serving one of his sentences. At some date not determinable from the record herein, Forrester was indicted for smuggling marijuana. The indictment was subsequently reduced to a lesser charge of failing to pay tax on imported goods in return for Forrester's agreeing to testify for the prosecution against others indicted in the smuggling charge.Forrester was convicted on the lesser charge and given two years probation. ULTIMATE FINDING OF FACT For each of the years 1967 and 1968 petitioner filed a false and fraudulent Federal income tax return with intent to evade tax. OPINION Respondent determined that petitioner greatly overstated his cost of goods sold (i.e., gold coins) for each of the years at issue, and that such overstatements were made with fraudulent intent to evade tax. Petitioner bears the burden of proving that the amounts claimed in his tax returns were correct. Should he fail to do so, the lower amounts allowed by respondent and the resulting deficiencies in tax must be sustained. Respondent *194 bears the burden of proving that the overstatements of cost of goods sold were made with intent to evade tax. To substantiate the amounts claimed as his cost of goods sold, petitioner introduced into evidence a large number of receipts purporting to show the purchase of gold coins by him from Forrester. Respondent contends, however, that such receipts are false, the product of a fraudulent conspiracy between petitioner and Forrester, and that in fact Forrester never sold any gold coins to petitioner. The allegations were supported by the testimony of Forrester himself, who was respondent's only witness. Petitioner, in turn, contends that Forrester is lying and that the receipts represent genuine transactions. Based upon the trial record as a whole and upon our impression of the two witnesses at trial, we believe Forrester's version of the origin of petitioner's purchase receipts. An examination of the receipts in question reveals that, although they were signed by Forrester, most of them were prepared by petitioner, in his own handwriting and on printed business forms bearing petitioner's letterhead. This is a most unusual business practice; where the sales receipts are *195 written up by the purchaser. Petitioner did not provide a plausible explanation for this extraordinary procedure. On the other hand, such procedure seems consistent with Forrester's version of the facts; the false purchase receipts had to correspond with coins actually sold by petitioner, so petitioner would have had to provide the information for the receipts which Forrester signed. He did so by simply preparing the receipts himself and giving them to Forrester to sign. Although it is not at all clear how petitioner actually did obtain the coins which he sold, the record contains a number of factors which lend a fatal air of unreality to his story that Forrester was his chief supplier. Forrester testified that he was $100paid per week by petitioner as compensation for assisting petitioner's scheme by signing the false receipts. This testimony is supported by the fact that Forrester's Federal income tax returns for the two years in question both included approximately $4,800 under miscellaneous income, which he explained at trial as representing the total of the weekly payments received from petitioner each year. Moreover, in order to accept petitioner's portrayal of Forrester *196 as the supplier of millions of dollars of gold coins, we would have to indulge in the assumption that Forrester filed false tax returns which did not report such sales. Petitioner and Forrester first met when they were both working as draftsmen for Martin-Marietta Corporation. Eventually petitioner became a dealer in gold coins, with annual sales in excess of $4 million. It seems a strange coincidence that petitioner's alleged chief supplier was his former co-worker at Martin-Marietta, a $125-a-week draftsman. It seems more plausible that when petitioner devised his scheme of false receipts he needed a person to play the role of supplier and to sign receipts, and he turned to Forrester, a co-worker to whom additional income of $100 per week would seem quite attractive. Petitioner failed to corroborate his version of the facts with any evidence other than his own self-serving testimony and the presentation of the alleged receipts, the authenticity of which has been denied by their signer. In these circumstances we are forced to rely almost exclusively on petitioner's own testimony in order to hold in his favor. In addition to the factors discussed above, which cast serious *197 doubts on petitioner's story, his credibility as a witness herein is seriously impugned by his extensive record of criminal convictions, including two convictions for first degree murder. Petitioner was serving one of his sentences in the penitentiary at the time of trial herein. Petitioner, on the other hand, has strongly challenged Forrester's credibility as a witness. The record indicates that Forrester had been involved with petitioner in the importation of certain goods into the country, and in connection with that activity he was indicted and convicted on a charge of failure to pay tax on imported goods (which charge had been reduced from a more serious smuggling offense in return for Forrester's testimony for the prosecution). Forrester was sentenced to two years probation. Petitioner also points out that Forrester's testimony herein directly contradicts a sworn statement given by Forrester in a deposition taken in 1969 in connection with an Internal Revenue Service investigation of petitioner. In that deposition Forrester corroborated petitioner's claim that petitioner had purchased coins from Forrester and that these purchases were represented by the receipts which Forrester *198 had signed. However, Forrester testified in the instant case that his statements in the 1969 deposition were false and were made at the insistence of petitioner. He stated that he felt compelled to corroborate petitioner's false story out of fear for his physical safety. While the inconsistency of Forrester's previous sworn statement with his testimony in this case raises doubts as to his credibility as a witness herein, his explanation of the prior false deposition is plausible considering the circumstances at that time. Forrester's claimed fear of petitioner is understandable in light of the violent personality revealed by petitioner's criminal record. Forrester's prior criminal conviction obviously reflects adversely upon his character and thus upon his veracity as a witness herein. We have taken this factor into account. Despite this, however, we find that Forrester's version of the facts herein is more plausible than petitioner's version. Petitioner failed to produce any evidence, other than references to Forrester's prior inconsistent sworn statement and his unrelated criminal conviction, in his effort to establish that the purchase receipts were legitimate and that *199 Forrester was lying. In addition to the alleged receipts signed by Forrester, petitioner presented a number of purported receipts signed by others. Respondent has not challenged the validity of these other receipts, and, in fact, has allowed petitioner a deduction for cost of goods sold for both years in question in amounts greater than the total of the "non-Forrester" receipts. Petitioner contends that the amounts allowed by respondent as cost of goods sold are unreasonably low in relation to the sales figures reported in the returns, i.e., that the resulting gross profit margins are so high as to be unrealistic. Respondent counters this argument with the suggestion that petitioner may have obtained coins through illegal means, so that his cost of goods sold would not have the normal percentage relationship to the sales figure.Regardless of the actual source of petitioner's gold coins, which remains shrouded in mystery, the amount of cost of goods sold allowed by respondent must be presumed correct unless petitioner sustains his burden of proof to the contrary.Since he failed to establish that the amounts claimed in his original returns, based principally upon the Forrester *200 receipts, were correct, the amounts allowed by respondent must be sustained. The 50 percent addition to tax for fraud must also be sustained. There can be little doubt that petitioner's scheme of preparing false receipts in support of his claimed deduction for cost of goods sold constituted fraudulent conduct with intent to evade tax. Cf. , affd. , cert. denied . We so hold. Throughout the proceedings in this case petitioner has claimed that he has been denied certain rights as a litigant and that he has not received a fair trial. Unfortunately, petitioner, having had considerable prior experience as a defendant in criminal proceedings, has continuously viewed his position in these proceedings as akin to that of a criminal defendant. The fact that the proceedings in this Court, instituted by petitioner himself, are civil and not criminal in nature was explained to him by the Court. Petitioner, who was not represented by counsel, was given all of the rights of a petitioner in this Court, including careful consideration of his numerous pre-trial *201 motions. Accordingly, we think that his claim of denial of rights herein is without merit. Decisions will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.↩
2. Petitioner filed an individual return for 1967 and a joint return with his wife for 1968.↩